**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 3:23-CR-00150 (SVN) |
| | ) | |
| v. | ) | |
| | ) | |
| MARIANO IRIZARRY and RYAN | ) | August 12, 2026 |
| BRAMWELL, | ) | |
| *Defendants.* | ) | |

**ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS**

Sarala V. Nagala, United States District Judge.

In this criminal action, Defendants Mariano Irizarry and Ryan Bramwell, along with other Defendants, were charged in relation to their alleged participation in a narcotics conspiracy. *See* Second Superseding Indictment, ECF No. 644. Irizarry and Bramwell await trial, which has been rescheduled several times and is now scheduled for jury selection on September 22, 2026. Both Irizarry and Bramwell have filed motions to dismiss the second superseding indictment with prejudice under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, arguing that the Government has engaged in a pattern of delay warranting dismissal of the charges against them. *See* Irizarry Mot. to Dismiss, ECF No. 892; Bramwell Mot. to Dismiss, ECF No. 893. The Government opposes both motions. *See* Opp. to Mots. To Dismiss, ECF No. 901.[1] The Government has also filed a separate motion to exclude time related to the most recent trial continuance for Speedy Trial Act purposes. *See* Mot. to Exclude Time, ECF No. 905. For the reasons described below, the Court DENIES Defendants' motions to dismiss and GRANTS the Government's motion to exclude time.

---

[1] Defendant Bramwell has filed a reply, in which Defendant Irizarry joins. *See* Reply, ECF No. 903; Mot for Extension of Time, ECF No. 908. The Government has also filed a motion to permit a sur-reply brief, which is addressed below. Am. Mot. to Permit Sur-Reply, ECF No. 911.

## I.    PROCEDURAL BACKGROUND

Between August and October of 2023, Defendants Irizarry and Bramwell were charged, along with ten other defendants, in relation to an alleged narcotics conspiracy.  *See* Indictment, ECF No. 13; Superseding Indictment, ECF No. 46.  Each of the ten other Defendants pleaded guilty to charges in the Superseding Indictment.  In June of 2025, a second superseding indictment charged Irizarry and Bramwell with three counts each in relation to the alleged conspiracy.  *See* ECF No. 644.   Bramwell was also charged with one count in relation to his allegedly unlawful possession of a firearm.  *Id.*[2]

Jury selection in this matter has been continued several times.  The procedural history relevant to the various continuances is summarized below.[3]

### A.  Continuances until July 22, 2025

Irizarry's original jury selection date, October 24, 2023, was first continued until April 23, 2024, to afford defense counsel the reasonable time necessary for effective preparation.  Order, ECF No. 38.  The Court excluded the time between September 28, 2023, and April 23, 2024, for Speedy Trial Act purposes.  *Id.*

Bramwell, along with the other defendants charged for the first time in the first superseding indictment, originally received a jury selection date of December 11, 2023.  *See* Orders, ECF Nos. 67–75.  After status conferences with the Defendants charged in the superseding indictment, jury selection was  continued to June 25, 2024—aligning a trial date for all Defendants.  Order, ECF

---

[2] Following a hearing on Bramwell's motions to suppress firearm and ammunition evidence, *see* Mot. to Suppress, ECF No. 765, and DNA evidence collected to establish a connection between Bramwell and the firearm, *see* Mot. to Suppress, ECF No. 766, the Government elected not to proceed with the related charge, and filed a motion to dismiss Count Six of the second superseding indictment.  *See* Mot. to Dismiss, ECF No. 824.  The Court granted the motion to dismiss.  Order, ECF No. 836.

[3] Bramwell contends that "[t]he only delay properly at issue in this motion was from mid-January [2026] to at least late-April [2026]," ECF No. 903 at 2, but the Court sets out a more fulsome history, as it is relevant to the general progression of the case and places the more recent delays in context.

No. 121.  Bramwell was queried on the record and consented to the continuance.  *Id*.  Irizarry objected to the continuance, of which he was not given prior explicit notice.  Notice, ECF No. 123. The Court evaluated Irizarry's objection and determined that the continuance was proper, and that the time between April 23, 2024, and June 25, 2024, was appropriately excluded under the Speedy Trial Act.  Order, ECF No. 177.

In May of 2024, the then-remaining Defendants, including Irizarry and Bramwell, filed a consent motion to continue jury selection until October of 2024, citing voluminous discovery and the need to continue plea discussions between some Defendants and the Government.  Mot. to Continue, ECF No. 268.  The Court granted the motion and continued jury selection until October 28, 2024.  Order, ECF No. 275.  Irizarry and Bramwell executed waivers of their Speedy Trial rights for the time period between June 25, 2024, and October 22, 2024.  Waiver, ECF No. 277 (Bramwell); Waiver, ECF No. 305 (Irizarry).

On August 28, 2024, the Court notified the parties that due to a scheduling conflict with an older criminal case set for trial on October 22, it intended to move the jury selection date in this matter to November 5, 2024.  *See* Govt. Mot. to Continue, ECF No. 359 at 1.  The Government subsequently filed a motion to continue jury selection until February of 2025, citing a conflict with a November 5 jury selection date.  *Id*.  During a status conference relating to the Government's motion to continue, all then-remaining Defendants except Bramwell consented to a trial continuance until February of 2025.  Order, ECF No. 375; *see also* Order, ECF No. 409.  Bramwell objected to the Government's motion to continue and subsequently filed a motion for severance. Mot. to Sever, ECF No. 387.  The Court denied Bramwell's motion, finding that any prejudice he may suffer from the delay did not justify severance of his trial from that of the remaining Defendants, particularly in light of the fact that the charges included an alleged conspiracy among

co-Defendants. Order, ECF No. 408. The Court then excluded the time between October 15, 2024, and February 25, 2025, for the purposes of the Speedy Trial Act. Order, ECF No. 409.

On January 20, 2025, after being discharged from a Salvation Army inpatient treatment facility due to noncompliance with the program rules, Bramwell removed his GPS monitoring device, left it in the facility's bathroom, and fled. *See* Order, ECF No. 545. Four days after Bramwell's flight, the Government filed an unopposed motion to continue the trial until June of 2025, given that Bramwell's whereabouts were unknown. Mot. to Continue, ECF No. 527. Defendant Irizarry consented to the motion. *Id.* The Court granted the motion and continued jury selection until July 22, 2025, noting that a June jury selection was not feasible under the Court's schedule. Order, ECF No. 538. The Court excluded the time between February 25, 2025, and July 22, 2025 for Speedy Trial Act purposes. *Id.*

Bramwell was apprehended on February 4, 2025. Return of Service, ECF No. 544. The Court inquired about the feasibility of returning to a February or March 2025 jury selection date, but the Government was unable to accommodate such a date. Order, ECF No. 548. Irizarry consented to maintaining the then-applicable July 22, 2025, jury selection date. *Id.* While Bramwell objected to a later trial date, the Court found this unpersuasive, as Bramwell's absconding from supervision was the cause of the delay. *Id.*

B. <u>Withdrawal of Defendants' Counsel and Appointment of Replacement Counsel</u>

During the summer of 2025, counsel for both Irizarry and Bramwell withdrew, necessitating appointment of new counsel and further trial continuances.

Between April and early June of 2025, Irizarry made multiple requests for his counsel to withdraw and for the appointment of new counsel. *See* Notice, ECF No. 599; Mot. to Withdraw, ECF No. 634; Notice, ECF No. 659. The Court originally attempted to move forward without the withdrawal of Irizarry's counsel. *See* Order, ECF No. 613. However, Irizarry's counsel made

4

clear that communication difficulties had developed between attorney and client.  Order, ECF No. 639; Order, ECF No. 694.  After a hearing, during which Irizarry confirmed he understood that replacing his counsel would likely lead to another continuance, the Court granted the motion to withdraw and appointed Irizarry new counsel.  ECF No 694.  The Court thereafter denied Bramwell's second motion to sever and continued trial until October 28, 2025.  Order, ECF No. 731; Order, ECF No. 736.  The Court excluded the time between July 14, 2025, and October 28, 2025 for Speedy Trial Act purposes.  ECF No. 736.

On July 22, 2025, the date the Court was set to hold a hearing on Bramwell's motions to suppress, his attorney moved to withdraw.  *See* Order, ECF No. 753.  The Court granted the motion after an *ex parte* hearing with both Bramwell and his attorney demonstrated there had been an irreconcilable breakdown in communication.  *Id.*  On August 7, 2025, Bramwell was appointed new counsel, Attorney Kathleen Dion.  Order, ECF No. 759.  Also on August 7, 2025, Irizarry's second lawyer filed a motion to withdraw.  Mot. to Withdraw, ECF No. 760.  The Court reluctantly granted the motion after finding that there had been a breakdown in communication between Irizarry and his second attorney similar in character to the breakdown in communication between Irizarry and his first attorney.  Order, ECF No. 771.

C.  Discovery-Related Continuances

1.  *Continuance until January 27, 2026*

On August 19, 2025, Attorney Dion filed a motion to continue jury selection, citing voluminous discovery (some of which had been produced to her by the Government on August 8, 2025).  Mot. to Continue, ECF No. 769; ECF No. 901 at 9 (describing the August 9 production). The Court granted the motion and reset jury selection for January 27, 2026.  Order, ECF No. 784. The Court excluded the time between August 27, 2025, and January 27, 2026, for Speedy Trial

Act purposes, finding that it would take significant time for newly appointed counsel to review the volume of discovery produced.  *Id.*

Irizarry's new attorney, who was appointed on August 20, 2025, quickly realized he had a conflict of interest and could not continue the representation.  Mot. for Hearing, ECF No. 781; Order, ECF No. 791.  On September 3, 2025, Attorney Steven Rasile was appointed to replace him and represent Irizarry.

On September 29, 2025, and October 8, 2025, Attorney Rasile received two batches of discovery disclosures from the Government.  ECF No. 892 at 2.  Due to the size of the disclosures, Attorney Rasile retained a discovery specialist, Julie de Almeida, to assist with review.  *Id.*  On approximately November 29, 2025, Attorney Rasile and Ms. De Almeida concluded that was a large amount of discovery material had either not been produced to Attorney Rasile "in a proper format" or had not been produced to Attorney Rasile at all.  *Id.*; *see also* ECF No. 893 at 2 (noting that some of the discovery produced to Attorney Rasile was formatted inconsistently or was not usable).

On December 12, 2025, upon motion by Attorney Rasile, the Court held a hearing in which Attorney Rasile explained his position that the discovery he was provided when he took over Mr. Irizarry's case was incomplete in some respects and improperly formatted in others, such that he was experiencing difficulties in preparing Irizarry's defense.  Mot. for Status Conf., ECF No. 830; Order, ECF No. 837.  Specifically, Attorney Rasile had requested that the Government produce: "load files" for all previously produced data, additional information regarding wiretap evidence, missing information from cell phone extractions, pole camera video footage, photos and videos of a search of 86 Woolsey Street, and potentially missing attachments to FBI reports.  Irizarry Mot. Exhibit A, ECF No. 892-1 at 2–6.  During the hearing, the Government represented that it was

working diligently to make this discovery available to Attorney Rasile, and that productions could be made by mid-January at the earliest.  ECF No. 837.

Attorney Rasile requested a trial continuance until at least June of 2026, so he could properly prepare for trial in this matter while also preparing for a five-week jury trial set to begin on March 12, 2026.  *Id.*  Irizarry "begrudgingly consented" to the extension, and Bramwell, who was present at the conference, did not object.  *Id.*  The Court continued jury selection until June 23, 2026, and excluded the time between December 12, 2025 and June 23, 2026, for Speedy Trial Act purposes, finding that the ends of justice served by the continuance, which would allow defense counsel the reasonable time necessary for effective preparation, outweighed the interests of the public and Irizarry and Bramwell in a speedier trial.  *Id.*  In its Order, the Court noted that the Government may need to produce additional or reformatted discovery to Bramwell, in addition to Irizarry.  *Id.*

### 2. Continuance until September 22, 2026

On January 8, 2026, the Government informed Attorney Rasile via email, copying Attorney Dion, that the outstanding discovery would be provided by January 16, 2026.  ECF No. 892 at 4; Gov't Ex. 4, ECF No. 901-1 at 11.  The Government advised defense counsel to "[p]lease send hard drives as soon as possible so we can load the phone extractions on to them."  *Id.*  The Government uploaded the materials in "load file" format to a hard drive provided by Attorney Rasile and sent it via FedEx on January 23, 2026.  Gov't Ex. 5, ECF No. 901-1 at 14–15.  On January 29, 2026, Attorney Rasile received the hard drive from the Government.  Status Report, ECF No. 855 at 1.  However, because the reproduced discovery was created using a different software program from the previous productions, Attorney Rasile and Ms. De Almeida were unable to review the discovery in the manner they had expected, such that review would be significantly more time-consuming.  *Id.*  The reproduced discovery also did not include pole

camera footage (approximately twelve terabytes' worth), which had been requested by Attorney Rasile at the December 12 status conference and again on January 21, 2026. *Id.* at 2; ECF No. 892 at 4.

On February 9 and February 17, 2026, counsel for Irizarry and Bramwell reached out to the Government regarding apparently missing materials and unexplained gaps in the productions' Bates numbering. Defs.' Status Report; ECF No. 862 at 1; Gov't Status Report, ECF No. 863 at 1–2. Attorney Rasile also emailed the Government on February 16, 2026, requesting information regarding body-worn cameras or other video footage of the 86 Woolsey Street search. Gov't Ex. 7, ECF No. 901-1 at 28. Attorney Dion, for her part, requested what she believed was missing discovery on February 17, 2026. *See* ECF No. 901 at 17–18. At the behest of Attorney Rasile, all parties conferred on March 6, 2026, to discuss remaining obstacles to the production of all discovery by the Government and review by defense counsel. *See* ECF No. 863 at 1–2; ECF No. 892 at 5. The Government represents it was working diligently to provide responses to defense counsel's requests, but acknowledges that it did not send them prior to the March 6 conferral. ECF No. 901 at 17–20.

At the meeting, the Government agreed to produce certain materials it had previously withheld, and to reproduce materials that that previously been produced either to Attorney Dion or to prior counsel but were missing from the reproductions, on March 13, 2026.[4] ECF No. 863 at 2–3. This included one cell phone extraction that had been produced to prior counsel, as well as a second cell phone extraction for a phone belonging to Irizarry, which had not been produced previously—though the Government did not explain why. *Id.* at 1–3 ("the Government located this extraction and is in the process of copying it for the March 13, 2026 production"). Further,

---

[4] The Government represents that Attorney Dion had some of the documents she believed were missing. ECF No. 901 at 19–20.

the Government indicated at the meeting that there was "no body camera evidence" from a search at 86 Woolsey Street in New Haven, conducted by local police and FBI.[5]  ECF No. 892 at 5.  In a status report filed three days later, however, the Government acknowledged that it "recently located" body-worn camera videos from the Connecticut State Police and East Haven Police Department from that search, and would produce such footage.  ECF No. 863 at 4.

The Court held a status conference to discuss the outstanding discovery issues on March 16, 2026.  Order, ECF No. 866.  At the conference, it became clear that certain discovery, including pole camera footage, had not yet been produced, and that the Government was unaware of whether additional body-worn camera footage from the 86 Woolsey Street search remained outstanding. Tr., ECF No. 890 at 8–20.  Both Defendants and the Government were given an opportunity to be heard regarding the production of the pole camera and body-worn camera footage.     *Id.* at 8–18. The Court then ordered the production of the pole camera footage and a list of officers present at the 86 Woolsey Street search and whether they wore body cameras.  Order, ECF No. 866.[6] Attorney Rasile orally moved to continue jury selection for thirty days after June 23, 2026, in light of delayed supplemental discovery productions for the Government.  *Id.*  Bramwell, who was

---

[5] The Government represents that 86 Woosley Street was the residence of a co-Defendant who has since been sentenced, Luis Sanchez-Vasquez. ECF No. 901 at 33. It further represents that two locations at that address were searched with two separate warrants:  the residence and the basement. *Id.* The search of the residence did not reveal items of evidentiary value. *Id.* at 21. In the basement, investigators discovered a bag containing a significant amount of controlled substances that the Government alleges belonged to Irizarry. *Id.* at 33.

[6] As part of the Court's Order at ECF No. 866, the Government was directed to produce a list to Defendants of all law enforcement personnel present during the 86 Woolsey Street search, and indicate whether they were wearing body-worn cameras, by March 20, 2026. The Government complied with the Court's orders. Notice, ECF No. 871; Notice, ECF No. 882. The Government's list indicated that there were several additional officers present at the 86 Woolsey Street search, wearing body-worn cameras, that had not previously been disclosed by the Government. ECF No. 892 at 7–8. On the same day, the Government provided body-worn camera footage from at least seven officers who had not been previously identified. ECF No. 893 at 7. The Government provided additional information regarding body-worn cameras, and additional body-worn camera footage, on March 25 and 26, 2026. ECF No. 892 at 8; ECF No. 893 at 7. Finally, on April 27, 2026, defense counsel received another previously undisclosed set of body-worn camera videos. ECF No. 893 at 7; ECF No. 892 at 8. The Government represents that at least some of the body-worn camera footage produced in March and April of 2026 did not show the search of the basement of 86 Woosley, where the drugs were located, but rather the search of other parts of the residence. ECF No. 901 at 20–21.

present, objected through counsel, and indicated that he would file a motion to sever and/or a motion to dismiss in light of the additional delay. *Id.* The Court granted the motion to continue, and continued jury selection until September 22, 2026, but explicitly declined to make findings relating to excluding time under the Speedy Trial Act. *Id.* To date, Bramwell has not filed a motion to sever relating to this continuance.

Additionally, between March 17, 2026, and April 2, 2026, Irizarry and the Government negotiated a procedure by which Irizarry could engage an expert to retest drug evidence seized by the Government. *See* ECF Nos. 870, 884, 885, 886. The Court entered an order allowing for this testing on April 13, 2026. Order, ECF No. 887. The order allowed the laboratory forty-five days to complete the retesting and an additional five days to return any residual substance and packaging to the Government. *See id.* ¶ 14. The Court later extended the deadline for the parties to transport the drug exhibits to the laboratory to June 5, 2026, at Irizarry's request. *See* Mot., ECF No. 896; Order, ECF No. 897. The exhibits ultimately were delivered to the laboratory on May 19, 2026, triggering the forty-five-day period for testing and five-day period for return of the residual substance and packaging. ECF No. 901 at 22.

D. Motions to Dismiss

The Government continued to make productions to defense counsel until at least April 27, 2026. On May 1, 2026, Defendants Irizarry and Bramwell filed the instant motions to dismiss the second superseding indictment with prejudice. ECF No. 892; ECF No. 893. Both Defendants argue that the time already excluded for purposes of the Speedy Trial Act between December 12, 2025, and April 27, 2026, should be retroactively included, because—due to the Government's delay in producing discovery material—this portion of the continuance granted on December 12 did not serve the interests of justice. ECF No. 892 at 19; ECF No. 893 at 11–12. Defendant Irizarry further argues that the Court should not exclude time for Speedy Trial Act purposes

between June 23, 2026, and September 22, 2026, because this additional delay was caused by the Government's neglect.  ECF No. 892 at 20.  Defendants further argue that the Government's discovery conduct warrants dismissal of the second superseding indictment with prejudice.  ECF No. 892 at 13; ECF No. 893 at 12.  The Government, for its part, opposes both motions and has moved to exclude the time between June 23, 2026, and September 22, 2026, for Speedy Trial Act purposes, arguing it has been proactive rather than neglectful in producing discovery materials to Defendants Irizarry and Bramwell.  ECF No. 901 at 25–35; ECF No. 905 at 1.[7]

After Bramwell filed a reply in support of his motion, which was later joined by Irizarry, the Government filed a motion for leave to file a sur-reply in opposition to the motions.  ECF No. 911.  For the reasons described in the Discussion section below, the Court considers only small portions if the Government's sur-reply in its resolution of the motions to dismiss.

## II.   MOTIONS TO DISMISS

For the reasons described below, the Court declines to retroactively include time that it previously excluded for Speedy Trial Act purposes.  Thus, the 70-day Speedy Trial clock has not run out, and Defendants' motions to dismiss are denied.

A.  Legal Standard

The Speedy Trial Act of 1974, 18 U.S.C. § 3161, is designed to safeguard a criminal defendant's constitutional right to a speedy trial and promote efficient resolution of criminal proceedings.  *See United States v. Breen*, 243 F.3d 591, 594 (2d Cir. 2001).  The Act requires that a defendant be brought to trial within seventy days of the later of the filing of the relevant indictment or the defendant's first appearance before a judicial officer.  18 U.S.C. § 3161(c)(1).  It

---

[7] As Bramwell notes, the Government's opposition memorandum, at 46 pages, is impermissibly long.  *See* District of Connecticut Local Civil Rule 7(a); Local Criminal Rule 1(c).  Nonetheless, in the interests of justice, the Court considers the entire response.  Government counsel shall ensure full compliance with the Local Rules going forward.

also sets forth several categories of delay that are excluded in computing the seventy-day period, including, for example, delay resulting from pretrial motions, the absence or unavailability of the defendant or an essential witness, and continuances based on a judicial finding that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* §§ 3161(h)(1)(D), 3161(h)(3)(A), 3161(h)(7)(A).

An indictment must be dismissed upon motion if a defendant is not brought to trial within seventy days, excluding permissible periods of delay under § 3161(h). *Id.* § 3162(a)(2). The moving defendant bears the burden of proof in supporting such a motion, while the Government bears the burden of production in connection with any exclusions of time. *Id.* In determining whether the indictment should be dismissed with or without prejudice, the Court shall consider, among other factors, "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." *Id.* Prejudice to the defendant should also be considered. *See United States v. Bert*, 814 F.3d 70, 79 (2d Cir. 2016) (quoting *United States v. Wilson*, 11 F.3d 346, 352 (2d Cir. 1993)).

B. Discussion

Assuming that it possesses the power to retroactively include previously-excluded time for Speedy Trial Act purposes, the Court finds that it is not justified in this case.

*1. District Courts' Approaches to Retroactive Inclusion of Time*

While it is clear that a district court may not retroactively determine that the ends of justice support an *exclusion* of time under the Speedy Trial Act, *see United States v. Tunnessen*, 763 F.2d 74, 77 (2d Cir. 1985), the Second Circuit has not addressed district courts' ability to retroactively *include* time for Speedy Trial Act purposes, based on a finding that the ends of justice were not actually served by a prior exclusion.

In the context of excluding time, the Second Circuit has explained that "[g]overnment failure to comply with discovery rules can prevent exclusion of time from speedy trial calculations if that failure is chronic or in bad faith." *United States v. Esquilin*, 205 F.3d 1325 (2d Cir. 2000) (summary order), also available at 2000 WL 232162, at *2 (2d Cir. Feb. 18, 2000) (citing *United States v. Anderson*, 902 F.2d 1105, 1109 (2d Cir. 1990)); *see also United States v. Pikus*, 39 F.4th 39, 58 (2d Cir. 2022) (district courts must "h[o]ld the Government accountable for its discovery obligations"). At least one district court has expressed skepticism regarding its ability to retroactively include time and whether it would be advisable to do so, *see United States v. Reichberg*, No. 1:16-CR-468 (GHW), 2018 WL 6599465, at *8–10 (S.D.N.Y. Dec. 14, 2018) (treating such request as a motion for reconsideration). But when asked to reconsider prior exclusions granted in the interest of justice, other district courts have generally applied the bad faith/chronic delay standard employed by the Second Circuit to exclude time. *See, e.g.*, *United States v. Jain*, No. 19-CR-59 (PKC), 2020 WL 6047812, at *11 (S.D.N.Y. Oct. 13, 2020) (finding that the Government's inaccurate statements regarding discovery "d[id] not provide a basis for rescinding exclusions under the Speedy Trial Act" because they did not constitute "'bad faith' conduct or an 'unjustifiable' lack of diligent preparation"); *see also Reichberg*, 2018 WL 6599465, at *10–12. "Inattentiveness" and even "inexcusable failures" demonstrating the Government's negligence have not justified retroactive inclusion of time. *United States v. Dafna*, No. 19-CR-408 (MKB), 2024 WL 4424241, at *8 (E.D.N.Y. Oct. 5, 2024) (citing *Jain*, 2020 WL 6047812, at *11 & *Reichberg*, 2018 WL 6599465, at *11); *cf. United States v. Masood*, No. 8:22-CR-91 (PX), 2025 WL 606482, at *12–13 (D. Md. Feb. 25, 2025) (rescinding prior exclusion of time "[b]ecause the STA prohibits exclusion of time based on 'lack of diligent preparation,' and the record now

13

plainly shows that the excluded time was the product of an inexcusable and chronic lack of diligence").

Two cases in the Western District of New York have retroactively excluded time due to the Government's delinquency during discovery without an explicit finding of bad faith, where an exclusion was expressly conditioned upon discovery disclosures. *See United States v. Morgan*, 493 F. Supp. 3d 171, 205–08 (W.D.N.Y. 2020); *United States v. Graham*, No. 1:21-CR-195 (LJV) (MJR), 2022 WL 2873876, at *3 (W.D.N.Y. May 2, 2022), *report and recommendation adopted*, No. 21-CR-195 (LJV) (MJR), 2022 WL 2872652 (W.D.N.Y. July 21, 2022).  In *Morgan* and *Graham*, the relevant interests-of-justice exclusion had been clearly or expressly conditioned on the Government's adherence to certain discovery obligations, which the Government later shirked. In both cases, the court found that, because the Government failed to do what it promised, the challenged continuance had not actually served the interests of justice, and thus that the time could no longer be excluded for Speedy Trial Act purposes.  *See Morgan*, 493 F. Supp. 3d at 205–08 (finding that an interest-of-justice exclusion was conditioned on the government's compliance with the deadline set for the production of discovery, and retroactively including time where the government failed to meet the deadline); *Graham*, 2022 WL 2873876, at *3 (vacating decision to exclude time in the interest of justice, because such exclusion—and the defendant's consent to the Government's requested continuance—was contingent upon the Government adhering to its representations that it would use the time to produce discovery and engage in plea negotiations, and the Government failed to do so).

### 2. *Application*

For the reasons explained below, the Court will not retroactively include the time between December 12, 2025, and April 27, 2026, for purposes of Speedy Trial Act calculations.  Defendants have not shown that the Government's discovery delays were undertaken in bad faith or were the

14

product of inexcusable delay or chronic lack of diligence.  None of the asserted failures on the part of the Government warrant retroactively including time that was previously excluded for Speedy Trial Act purposes.

The Court notes first that Defendants' memoranda in support of their motions to dismiss present several months of discussions and disputes between the parties in largely narrative format. Only in limited sections of the briefing do Defendants argue how the governing law should be applied to the facts at hand, or identify the Government conduct most salient to the legal analysis. The Court has endeavored to focus its analysis on the Government conduct that appears most concerning to Defendants or constitutes a potential violation of the Government's discovery obligations.   Both Defendants point to the Government's delay in reproducing discovery in load file format, as well as its delay in producing pole camera video footage and body-worn camera footage of the law enforcement search of 86 Woolsey Street.  Throughout their briefing, Defendants further emphasize that they continued to receive productions from the Government up until the filing of the instant motions to dismiss.  ECF No. 892 at 8; ECF No. 893 at 7; ECF No. 903 at 5.  Bramwell additionally asserts that the Government's discovery conduct was improper because the Government failed to provide load file reproductions until one month after counsel delivered a hard drive, failed to fully respond to counsel's request that the Government provide replacements for corrupted files, and generally failed to understand its discovery obligations to him.  The Court considers each asserted failure in turn.

### a.   Load Files

First, the Government's production of the load files to Irizarry's counsel on January 29, 2026, and to Bramwell's counsel on March 11, 2026, does not warrant rescinding time.

As an initial matter, the Court agrees with the Government that the Government ordinarily would not be obligated to reproduce discovery in a different format requested by defense counsel,

15

to the extent it had previously produced such discovery in another format. While the Government agreed to reproduce the discovery in Attorney Rasile's preferred format as a courtesy, neither Defendant has pointed the Court to no legal authority *requiring* the Government to do so.

In the absence of any legal requirement that the Government produce the load files for discovery it had already produced, the fact that the Government did not achieve its target date for reproducing the load files does not require retroactive exclusion of time (or dismissal). At the December 12, 2025, status conference, the Government represented to the Court that it estimated reproductions could be made "at the earliest, by mid-January." ECF No. 837. It appeared to the Court, based on the parties' representations at the December 12 conference, that the parties were cooperating to fulfill Defendants' discovery requests. The parties did not propose, and the Court did not order, a specific deadline for the production of the additional discovery. The Government later represented to defense counsel that it could make a production on January 16, 2026, but in light of delays in receiving a hard drive from defense counsel and due to a winter storm, the Court finds that the delay in sending the materials until January 23 and in defense counsel not receiving them until January 29 did not violate the Government's discovery obligations. *See Jain*, 2020 WL 6047812, at \*11 (S.D.N.Y. Oct. 13, 2020) ("The fact that the government's statements regarding its discovery material proved to be inaccurate does not provide a basis for rescinding exclusions under the Speedy Trial Act"); *see also Reichberg*, 2018 WL 6599465, at \*10.

While there was additional delay in producing load files to Bramwell, there is no evidence in the record before the Court that Bramwell's counsel requested load file reproductions from the Government, and the Court did not specifically order that the Government produce additional discovery as to Bramwell, but rather left such discussions up to the parties. *See* ECF No. 837 ("Counsel for Defendant Bramwell is also being included in these conversations, such that the

16

government may also produce any necessary additional or reformatted discovery to Defendant Bramwell's counsel as well."). Bramwell asserts that his counsel had to learn from Attorney Rasile on February 5 that they needed to mail a hard drive to the Government in order to receive discovery reproductions. ECF No. 893 at 4. However, Exhibit 4 to the Government's brief demonstrates that Bramwell's counsel was included on a January 8 email advising Attorney Rasile of the need to provide a hard drive. ECF No. 901-1 at 11–12. Thus, Attorney Dion cannot claim unfair surprise at this news.

The Court is not privy to the parties' communications about Bramwell's requests for load files, or any other requests from Bramwell—even though it specifically instructed Defendants to set forth in their motions "a detailed chronology of their discovery requests, the Government's responses to their discovery requests, and nature and status of the Government's production(s) of supplemental discovery." ECF No. 866. Thus, on the basis of the record before it, Defendants have proffered no authority from which this Court can conclude that the delay in producing load files supports an inference of bad faith or inexcusable, chronic delay.[8]

b.  Pole Camera Footage

Second, the Government's failure to provide all pole camera footage to Defendant Irizarry in January, along with the other reproduced discovery, does not warrant inclusion of time.[9]

Again, the Government had no legal obligation to provide the voluminous pole camera footage to defense counsel, as the Standing Order on Criminal Discovery in the Local Rules requires only that defense counsel be allowed to "inspect or listen to and record items which are

---

[8] To the extent Defendants contend that the Government's use of a different software program to reproduce the discovery in load file format is a factor warranting retroactive inclusion of time, *see* ECF No. 892 at 5; ECF No. 893 at 4, the Court finds that it is not. There is no evidence that the Government's use of a different software program was intended to cause undue review difficulties or was the result of an unjustifiable lack of diligence, particularly as it was providing the load files merely as a courtesy.

[9] Bramwell's motion to dismiss mentions the pole camera footage in passing, but does not assert that the Government was dilatory or otherwise acted improperly in producing such footage to Bramwell. ECF No. 893 at 3–6, 10.

impractical to copy." Standing Order, Section (A)(1).  The Government nevertheless agreed to do so as a courtesy, based on Attorney Rasile's representation that reviewing the footage at the FBI was onerous.  *See* ECF No. 901 at 28.

At the December 12 conference, it appeared the parties had agreed to the Government providing excerpts of pole camera footage, though the scope of such excerpts and size of the corresponding files was not discussed in detail.  *Id.* at 28–29.  The parties' filings indicate that there may have been a miscommunication between defense counsel and the Government regarding the hard drives required for the pole camera productions, such that there was a delay in transmitting the necessary drive from Irizarry's team to the Government.  *See* ECF No. 892 at 4; ECF No. 903 at 2 n.2; ECF No. 901 at 30 (indicating a much larger hard drive would be required for pole camera footage, and that Attorney Rasile promptly sent it after discussing such with the Government).  Thereafter, the Government indicates that the FBI experienced technical difficulties in uploading the pole camera footage to the drive, creating further delay.  ECF No. 901 at 30–31; *see also* Tr., ECF No. 890 at 15–18.  The record suggests that the Government endeavored to produce extremely voluminous footage to Defendant Irizarry despite technical challenges.  After the March 16 hearing, the Court ordered the Government to produce such footage, and it did so in a timely manner.  Notice of Compliance, ECF No. 882.  Thus, the Government's conduct does not reflect an unjustifiable lack of diligence or bad faith.

c.  Body-Worn Camera Footage

Third, the Government's failure to properly investigate the existence of, and produce, body-worn camera footage also does not support rescinding the excluded time.  While the Court remains disappointed that the Government appears to have been unaware that various officers present at the 86 Woolsey Street search in 2023 were wearing body-worn cameras until after the conference on March 6, 2026, the Government's delayed acknowledgement and production of

body-worn camera footage is similar to other negligent conduct that does not justify retroactive inclusion of time. For example, in *Jain*, the Government advised the Court less than two months before a scheduled trial that it "'learned that it was in possession of'" five terabytes of additional data that had not been produced to the defendant, "despite representations that discovery was complete." *Jain*, 2020 WL 6047812, at *1. The Government had possessed such data for sixteen months, and its existence was known to members of the prosecution team. *See id.* at *1. Based on a review of the record, the court concluded that "the failure to timely produce this data was the result of a pattern of inattentiveness, carelessness, failure of recollection . . ." and was "inexcusable." *Id.* at *1. Even so, the court found that such failures "bespeak of negligence and not conduct that was intentional or recklessly indifferent to the rights of [the defendant]," and the government's inaccurate statements regarding the completion of discovery did not provide a basis for rescinding exclusions of time. *Id.* at *1, 11–12 (citing *Esquilin*, 2000 WL 232162, at *2 and *Reichberg*, 2018 WL 6599465, at *7). The same is true here.

Further, the fact that the Government investigated the existence of body-worn camera footage after the March 6 meet and confer, promptly advised defense counsel of its existence, and provided the materials it previously failed to disclose, indicates the failure was not intentional. *See Dafna*, 2024 WL 4424241, at *8 ("[A]lthough the government previously made inaccurate representations about the completion of discovery, and has twice untimely revealed discovery materials, it has, at each juncture, continued to provide the discovery that it inadvertently failed to previously disclose. The government's failure to produce the data therefore appears to have been due to inattentiveness and other 'inexcusable failures [that] bespeak of negligence and not conduct that was intentional or recklessly indifferent' to Defendants' rights.") (quoting *Jain*, 2020 WL 6047812, at *1).

That said, the failure of the prosecutor to accurately determine whether there was body-worn camera footage from the relevant searches before March of 2026—more than two-and-a-half years after the case was indicted—is quite troubling the Court (as is the prosecutor's failure to identify that a cellular phone extraction for a phone belonging to Irizarry had not previously been produced). The Government concedes that at least some of the footage finally produced in March of 2026 concerned the search of the basement at 86 Woosley, where a substantial quantity of narcotics it attributes to Irizarry was found. That this footage was not produced to Irizarry's first five attorneys, and that Attorney Keefe originally represented to Attorney Rasile that no such footage existed, only to then reverse course and produce *several* officers' body-worn camera footage from searches at that location, is nothing short of alarming. It suggests a lack of diligence on the part of the Government to thoroughly investigate whether body-worn camera footage existed before making a representation that it did not. While the misrepresentation was ultimately corrected, it should not have been made in the first place. The Court urges the Government (including the investigating agencies with which it works) to review their procedures to ensure that all relevant body-worn camera footage is produced in cases like this, involving multiple law enforcement agencies and multiple defendants.

### d. Continuing Productions

Fourth, the fact that the Government continued to produce discovery throughout April and May of 2026 does not warrant exclusion of time. Absent information indicating that recently-produced materials were withheld due to an unjustifiable lack of diligence or in bad faith, the Court cannot conclude that the Government has violated discovery obligations based on the fact of continued productions. *See, e.g.*, *United States v. Steiner*, No. 19-CR-0295 (HG), 2022 WL 2390943, at *2 (E.D.N.Y. July 1, 2022) ("The Second Circuit—even in cases where the government produces significant amounts of discovery shortly before trial—has found there is no

20

Rule 16 violation so long as that evidence is 'promptly produced to defense counsel' and there is sufficient time to review the materials.").  Indeed, as these productions were made after the trial was continued to September 22, Defendants have ample time to review the evidence produced in May.  Bramwell's reply, and the Government's sur-reply, indicate that Bramwell recently requested additional discovery, and the Government disputes the relevance of the requested materials.  *See* ECF No. 903 at 8–9; ECF No. 911-1 at 1–2.  The briefing on this point is more indicative of legitimate disputes about the relevance of certain materials than the Government's abdication of its duty to produce materials to the defense.

### e.  Concerns Specific to Defendant Bramwell

Finally, Defendant Bramwell's motion asserts several more instances of allegedly improper discovery conduct by the Government.  Without clear information as to what additional materials the Government agreed to produce to Bramwell after its initial production in August of 2025, however, the Court cannot conclude that inclusion of time is warranted.

 Bramwell's motion to dismiss expresses concern that in early 2026, the Government "did not act as though it understood its discovery obligations to Mr. Bramwell."  ECF No. 893 at 10.  Specifically, Bramwell asserts that the Government "expressed unawareness" that it needed to produce unspecified discovery to Bramwell, and failed to inform his counsel that they needed to provide a hard drive to receive the January 2026 discovery reproductions.  *Id.*

While the Court would certainly be troubled by a failure to produce agreed-upon discovery to Bramwell—assuming such productions were required under Rule 16, the Standing Order, or other relevant authority—it cannot find that to be the case here.  Contrary to what Bramwell suggests in his motion, the Court did not order the Government to make any productions to Bramwell after the December 12 hearing, as described above.  ECF No. 837 ("Counsel for Defendant Bramwell is also being included in these conversations, such that the government *may*

21

also produce any necessary additional or reformatted discovery to Defendant Bramwell's counsel as well.") (emphasis added).  The motion asserts that the Government agreed to make productions during a "conversation with Mr. Bramwell's counsel outside court on . . . December 12."  ECF No. 893 at 10.  However, without any details about the substance of the parties' December 12 conversation, the Court cannot conclude the Government failed to meet production obligations created therein.

Bramwell further argues that the Government provided late and incomplete responses to a letter from Attorney Dion dated February 17, 2026.  ECF No. 893 at 4–5.  Specifically, Bramwell's counsel represents that the letter identified corrupt files produced from an extraction of Bramwell's cell phone, but counsel does not attach a copy of that letter—or any other communication referencing corrupt files—to the motion to dismiss or reply brief.  *See id.* at 10; ECF No. 903 at 7 (identifying a phone extraction as the corrupt file).  Bramwell's motion does not specifically identify any other files that were flagged as corrupt.  The Government provided a letter response to the February 17 letter dated March 6, 2026.  ECF No. 901-1 at 30–35.  The Government's letter indicated that all Bramwell phone extractions would be reproduced on March 13, 2026.  *Id.* at 1. Bramwell maintains that this letter "did not address the . . . corrupt files," ECF No. 893 at 10, but has not raised concerns about any corrupt files in the mid-March reproduction.  To the extent Bramwell implies that his counsel requested reproductions of *additional* corrupt files that were not addressed by the Government's response, such files are not identified anywhere in the briefing, and thus the Court cannot evaluate whether the Government violated any discovery rules with respect to them.

Thus, on the present record, the Court cannot conclude the Government failed to meet production obligations as to Bramwell, much less that it did so in a manner that suggests bad faith or inexcusable delay.

### f.   The Western District of New York Approach

Even if the Court were to apply the approach used in *Morgan* and *Graham*, retroactive inclusion of time would not be warranted here.  This case is distinguishable from *Morgan* and *Graham*, because the Government was not derelict in complying with explicit conditions upon which the Court's December 12, 2025, ends-of-justice finding was based.

In *Morgan*, the district court found that the magistrate judge who granted a continuance intended to condition the interest-of-justice exclusion on the Government's compliance with the deadline set for the production of discovery.  493 F. Supp. 3d at 205–06.  It was undisputed that the Government failed to do so, and thus the Court retroactively found that the speedy trial clock began running the day after the production deadline.  *Id.* at 206–07.  Here, by contrast, the Court did not condition the exclusion of time on meeting an explicit production deadline; it merely acknowledged the Government's estimated *earliest* date at which it could begin additional productions.  *See* ECF No. 837.  The continuance until June 23, 2026, was designed to accommodate sufficient time for Attorney Rasile to prepare for trial in light of his spring trial schedule, in addition to the need for the Government to produce additional or reformatted discovery.  *Id.* The Court did not divide the time between December 12 and June 23 into a "production" period and a "preparation" period, as might support a finding that Defendants were completely deprived of any intended preparation period.  *Cf.* ECF No. 893 at 11–12; *see Dafna*, 2024 WL 4424241, at *8.  Indeed, the Government made rolling disclosures throughout the

continuance.  Most critically, defense counsel has not identified how, if at all, the actual delays over the past several months have impacted their ability to prepare defenses for trial.[10]

Likewise, in *Graham*, the government sought to exclude time under the Speedy Trial Act so it could produce discovery and engage in plea negotiations, and "the exclusion of time was expressly dependent upon the Government taking certain affirmative steps."  *Graham*, 2022 WL 2873876, at *3.  The Government then failed to provide any discovery or engage in any plea negotiations during the continuance—and appeared to have used the time to charge Graham with additional and more serious offenses.  *Id.*  The *Graham* court thus vacated its decision to exclude time, noting that "the Government wholly failed to engage in *any* of the activities on which the interest of justice exclusion was based."  *Id.* n.8 (emphasis added).  Again, this case is meaningfully distinguishable.  Not only was the continuance not expressly dependent upon the Government's actions, but Defendants also acknowledge that the vast majority of agreed-upon discovery was produced by the time they filed the instant motions to dismiss—more than six weeks prior to the end of excluded time.  The delays described above, while understandably frustrating to the defense, *see Dafna*, 2024 WL 4424241, at *8, are a far cry from the unmitigated failures to produce *any*

---

[10] The Court notes that both Defendants have sought to have the drug evidence tested in the spring and summer of 2026, so the additional time before trial has also inured to their benefit.  *See* Irizarry Mot. for Order Permitting Testing of Drug Evidence, ECF No. 870 (filed March 17, 2026); Status Report re: Irizarry's Motion, ECF No. 886 (filed April 2, 2026); Bramwell Mot. for Order Permitting Testing of Drug Evidence, ECF No. 918 (filed July 6, 2026).

discovery described in *Graham*.[11]   Finally, the Court again notes that, even if it *had* premised the December 12 continuance and ends-of-justice finding on a promise that the Government later clearly breached, the approach taken outside of the Western District of New York still counsels against dismissal absent a showing of bad faith or an unjustifiable lack of diligence. *See, e.g.*, *Reichberg*, 2018 WL 6599465, at \*10.

### 3. *Dismissal With or Without Prejudice*

Because the Court declines to retroactively include time for the purposes of the Speedy Trial Act, the Speedy Trial Act has not been violated, and dismissal is not required. *See United States v. Donovan*, No. 20-CR-374 (PKC), 2021 WL 5819915, at \*3 (E.D.N.Y. Dec. 6, 2021) ("Even without Defendant's consent, there is no speedy-trial violation where the district court makes findings, as here, that the exclusion of time is in the interest of justice.") (citing *United States v. Lynch*, 726 F.3d 346, 355 (2d Cir. 2013)).  Thus, the Court need not reach the question of whether it is appropriate to dismiss the indictment with or without prejudice.

---

[11] The use of the term "voluntary discovery" in *Morgan* has no bearing on whether the Government's discovery conduct warrants inclusion of time in this case.  With respect to the majority of the discovery requested in December 2025 (with the exception of the body-worn camera footage), the Government's position has consistently been that it does not have an affirmative obligation to produce or reproduce such discovery, but that it has chosen to do so in the interest of efficiency and collaboration with defense counsel, a proposition with which the Court agrees.  In his reply, Bramwell hypothesizes that the "voluntary" qualifier in *Morgan* indicates that time may be retroactively included for Speedy Trial Act purposes even when the Government's discovery failures relate to material that goes above and beyond the obligations imposed upon the Government by federal criminal discovery rules.  ECF No. 903 at 4.  The District Court for the Western District of New York appears to regularly use the term "voluntary discovery" throughout the criminal discovery process, and used it in the *Morgan* and *Graham* cases.  *See Morgan*, 493 F.Supp.3d 171; *Graham*, 2022 WL 2873876, at \*3; *see also, e.g.*, *United States v. Gerace*, No. 1:23-CR-60 JLS (MJR), 2025 WL 2406311, at \*6 (W.D.N.Y. Aug. 20, 2025).  Case law searches confirm that this is not a term used throughout the rest of the Circuit.  While the term is not clearly defined in the cases reviewed by the Court, it appears that the Western District of New York uses "voluntary discovery" to refer to the materials produced by the Government without a court order, whether or not they are required by the federal discovery rules.  *See, e.g.*, *Gerace*, 2025 WL 2406311, at \*6 (noting the Government made "required disclosures through voluntary discovery" under Rule 16).

#### 4. *The Government's Sur-Reply*

The Court grants in part and denies in part the Government's motion for leave to file a sur-reply in opposition to the motions to dismiss. In resolving the present motions to dismiss, the Court considered the Government's sur-reply only for a very limited purpose.

District of Connecticut Local Civil Rule 7(d), applicable to criminal proceedings pursuant to District of Connecticut Local Criminal Rule 1(c), provides that the Court may grant permission to file a sur-reply "upon a showing of good cause." "Sur-replies may be permitted 'when an opposing party raises arguments for the first time in a reply.'" *Bronx Conservatory of Music, Inc. v. Kwoka*, No. 21-CIV-1732 (AT), 2024 WL 53569, at *2 (S.D.N.Y. Jan. 4, 2024) (quoting *Preston Hollow Cap. LLC v. Nuveen Asset Mgmt. LLC*, 343 F.R.D. 460, 466 (S.D.N.Y. 2023)). However, "'[s]ur-replies are the exception, not the rule, and are not a mechanism for shoring up arguments previously made with evidence not previously submitted.'" *Williams v. Tashjian*, No. 1:23-CV-1212 (ECC/DJS), 2026 WL 879315, at *5 (N.D.N.Y. Mar. 31, 2026) (quoting *Polidoro v. L. Firm of Jonathan D'Agostino, P.C.*, No. 19-CV-1290, 2022 WL 20596709, at *5 (S.D.N.Y. May 19, 2022)).

Only a subset of the Government's proffered reasons for filing a sur-reply constitute good cause for doing so. The Government argues that its proposed sur-reply (1) contextualizes Bramwell's reference to discovery produced in April 2026, (2) offers additional facts relating to a May 2026 letter from Bramwell to the Government, (3) offers additional facts relating to a May 2026 report from the Government, (4) offers an alternate legal interpretation of the term "voluntary discovery" as used in *Morgan* and *Graham*, (5) notes that "the reply does not refute that zero of the 70 days of the Speedy Trial Clock have been used." ECF No. 911. The Court does not consider the Government's additional argument relating to discovery produced in April of 2026, because it had the opportunity to discuss the import of such discovery in its response to Defendants' motions

and need not be afforded another.  *See Williams v. City of Hartford*, No. 3:15-CV-00933 (AWT), 2017 WL 11448094, at *5 (D. Conn. June 26, 2017) (noting that "leave to file a sur-reply should be denied where the moving party 'previously had ample opportunity to address' the opposing party's arguments") (citation omitted).  And the fifth reason offered by the Government is simply not good cause for a sur-reply.  *See id.*  On the other hand, the Court does consider the sur-reply insofar as it discusses events that had not yet occurred when Defendants filed their motions to dismiss, but were included in Bramwell's reply, such that the Government did not previously have an opportunity to respond.  It likewise considers the Government's response to Bramwell's argument—raised for the first time in reply—that the *Morgan* and *Graham* cases support retroactively including time, even for Government failures to produce discovery above and beyond that required by the Federal Rules.  *See Bronx Conservatory of Music, Inc.*, 2024 WL 53569, at *2.  Accordingly, the Government's renewed motion to submit a sur-reply is granted in part and denied in part.

## III.    MOTION FOR EXCLUSION OF TIME

The Court grants in part the Government's motion to exclude the time between June 23, 2026, and September 22, 2026.

The time between June 23, 2026, and the date of this Order is automatically excluded under the Speedy Trial Act, which excludes "delay resulting from any pretrial motion, from the filing of the motion" through its "prompt disposition."  18 U.S.C. § 3161(h)(1)(D); *see United States v. Shellef*, 718 F.3d 94, 109 (2d Cir. 2013) ("[T]his court [has] specifically rejected the argument that 'a motion to dismiss on speedy trial grounds should be treated differently from other pretrial motions" for purposes of applying the [Speedy Trial] Act's automatic exclusion for pretrial motion delay[.]'") (quoting *United States v. Bolden,* 700 F.2d 102, 102–03 (2d Cir. 1983)); *see also*

27

*Bolden*, 700 F.2d at 103 ("[T]he delay resulting from a speedy trial motion is no different from that resulting from any other pretrial motion . . . An opportunity to be heard and due deliberation are as necessary for a speedy trial motion as for any other motion.").

The Court likewise excludes time between the date of this order and September 22, 2026. At the March 16 status conference, Defendant Irizarry requested a 30-day continuance. Tr., ECF No. 890 at 32. A one-month continuance would have brought jury selection to July 28, 2026. However, Attorney Keefe was unavailable from July 24 to August 2. *Id.* at 33. The Court then offered its September 1 jury selection date, but Attorney Dion had a conflict the week of September 1. *Id.* After September 1, the next available jury selection date was September 22.

The Court finds that the continuance until September 22 is appropriate in the interest of justice. Defense counsel has diligently reviewed the produced discovery and has sought supplemental information that may assist in their clients' defense. The need for this final continuance was precipitated by delays in the Government providing responsive supplemental discovery productions. However, based on the parties' motions and supporting documentation, as well as the history of this case, the Court finds that the Government has been reasonably diligent in responding to Defendants' requests, aside from the Court's concern about the body-worn camera footage and missing cell phone extraction expressed above. While time may not be excluded due to "general congestion" of the Court's schedule, 18 U.S.C. § 3161(h)(7)(C), given that the Government expects to use approximately three weeks to present its case against Defendants Irizarry and Bramwell, the September 22 jury selection date is the earliest available, taking into account Attorney Rasile's request for a continuance and Attorney Dion's availability.

Accordingly, the Court excludes the time between May 1, 2026, and August 12, 2026, as this time was necessary to resolve Defendants' motions to dismiss. 18 U.S.C. § 3161(h)(1)(D). It

further excludes the time between August 12, 2026, and September 22, 2026, in the interest of justice. 18 U.S.C. § 3161(h)(7)(A). The ends of justice served by this continuance outweigh the interests of Defendants and the public in a speedier trial, for the reasons outlined above.

## IV.    CONCLUSION

For the reasons described herein, Defendants' motions to dismiss at ECF Nos. 892 and 893 are DENIED; the Government's motion to exclude time for Speedy Trial Act purposes, ECF No. 905, is GRANTED as to the time between August 12, 2026 and September 22, 2026; and the Government's amended motion to permit a sur-reply brief, ECF No. 911, is GRANTED IN PART and DENIED IN PART.

**SO ORDERED** at Hartford, Connecticut, this 12th day of August, 2026.

 */s/ Sarala V. Nagala*　　　　　
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE